# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE A. BROOKS; BROOKS INDUSTRIES, INC., <br><br>　　　　　　Plaintiff, <br>v. <br><br>MOTSENBOCKER ADVANCED DEVELOPMENTS, INC.; GREGG A. MOTSENBOCKER; SKIP A. MOTSENBOCKER, <br><br>　　　　　　Defendants. | Civil No. 07cv773 BTM (NLS) <br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S FOURTH MOTION TO COMPEL** <br><br>[Doc. No. 88] |

　　　George Brooks and Brooks Industries, Inc. (Plaintiffs) filed this fourth motion to compel defendant Motsenbocker Advanced Developments, Inc. (MAD) to respond to their third set of Requests for Production of documents (RFPs), and to compel defendants Gregg Motsenbocker and Skip Motsenbocker to respond to their second sets of RFPs. Defendants refused to produce responses to any of the requests based on objections. Plaintiffs narrowed some of the requests, but Defendants still have not produced any responsive documents.

　　　For the following reason, the Court **GRANTS in part** and **DENIES in part** Plaintiffs' motion to compel.

**Telephone Numbers Used.**

　　　In RFP no. 54 of Plaintiffs' third request to MAD, Plaintiffs request that MAD provide "all documents containing phone numbers you have used either landline or cellular from April 1997 to April

1  2006." In RFP no. 1 to Gregg and Skip Motsenbocker, Plaintiffs request "All documents containing
2  telephone numbers you have used either at work at home or cellular from April 1997 to April 2006."
3  Defendants objected to both requests on grounds that the RFPs were overbroad, irrelevant, an unjustified
4  invasion of privileged privacy, unnecessarily called for all of Defendants' phone books, and contained
5  third parties' private identification and contact information for which Plaintiffs failed to provide proper
6  notice.

7  Plaintiffs later limited the request to documents. For RFP no. 54, Plaintiffs request: "Documents
8  showing phone number that MAD has been billed for from April 1997 to April 2006. Further, MAD
9  need not produce all phone bills, just one document for each phone number containing somewhere on it
10 the phone number." Pls.' Ex. E, p.58. For RFP no. 1, Plaintiffs amended the request to say:
11 "Documents showing phone numbers that Gregg & Skip Motsenbocker have been billed for from April
12 1997 to June 2005. Further, MAD need not produce all phone bills, just one document for each phone
13 number containing somewhere on it the phone number." Pls.' Ex. E, p.58.

14 While Defendants maintained their original objections to the revised requests, in the
15 opposition–under the express title of "RFP No. 54"–they provide the phone and fax numbers for MAD.
16 In the reply, Plaintiffs state that they no longer seek a response to RFP no. 54. They do argue, however,
17 that because the individual defendants made no argument regarding RFP no. 1, this Court should order
18 them to respond to the amended RFP.

19 The Court finds amended RFP no. 1 to be overbroad to the extent it calls for phone numbers that
20 were not used to conduct business. Therefore, the Court **GRANTS in part** Plaintiffs' motion as to RFP
21 no. 1, and orders Gregg Motsenbocker and Skip Motsenbocker to provide, by ***July 3, 2008***, to Plaintiffs
22 any phone numbers they used from April 1997 to April 2006 to conduct business for MAD. The
23 individuals may exclude phone numbers, such as home phone numbers, unless those numbers were used
24 to conduct business.
25 / / /
26 / / /
27 / / /
28 / / /

**Travel Records.**

In RFP no. 55 to MAD, Plaintiffs request "All travel records including calendars from April 1997 to April 2006." In RFP no. 2 to Gregg and Skip Motsenbocker, Plaintiffs request "All travel records including personal calendars from April 1997 to April 2006." Defendants objected to both requests on grounds that the RFPs were overbroad, irrelevant, an unjustified invasion of privileged privacy, unnecessarily called for Defendants' private and confidential credit information, and contained third parties' private identification and contact information for which Plaintiffs failed to provide proper notice. Plaintiffs then limited the RFPs to seek "All travel records including calendars from April 1997 to June 2005 of George Brooks, Gregg Motsenbocker and Skip Motsenbocker." Defendants maintain their objections.

The party resisting discovery must explain why the discovery is impermissible and has the burden to clarify, explain and support its objections. *Blankenship v. Hearst Corp.,* 519 F.2d 418, 429 (9th Cir. 1975). Simply asserting these boilerplate objections is insufficient to meet Defendants' burden of explaining why the RFPs are objectionable. *See Bible v. Rio Properties, Inc.*, 2007 U.S. Dist. LEXIS 80017, *11 (C.D. Cal. 2007) (citations omitted).

Here, Defendants argue the modified RFPs remain objectionable because the travel reports for Brooks and the Motsenbockers contain the private travel records of individual employees. They also say Plaintiffs' claim that "travel records showing the Defendants were at trade shows were [*sic*] Mr. Brooks claims to have represented the products would show that Mr. Brooks was indeed a sales representative ... and that Defendants were well aware that Mr. Brooks was acting as a sales representative" is (1) unavailing because it is equally viable that Brooks' presence at the trade shows was to demonstrate his ability to refinish metal with Defendants' products; and (2) irrelevant because Defendants have never denied that Brooks attempted to make sales of Brass Wash, Coating Remover, Lacquer Remover and Finish Coat at trade shows.

Defendants represent that no travel records demonstrate Brooks was ever paid anything but his salary to attend trade shows on MAD's behalf during the eight months he worked for them. Because this information is at least relevant to Defendants' defense, the Court finds the documents sought in Plaintiffs' amended request for travel records to be relevant to the claims at issue here. Therefore, the

1 Court **GRANTS** Plaintiffs' motion to compel production of these documents. The Court, however,
2 sustains Defendants' objection regarding protection of the private travel records of individual
3 employees. Defendants shall produce all travel records for Brooks, Gregg Motsenbocker and Skip
4 Motsenbocker, including calendars, from April 1997 to June 2005, by ***July 3, 2008***. Defendants may
5 redact the private or confidential information of any individual employees, Gregg Motsenbocker or Skip
6 Motsenbocker or may produce those documents subject to the protective order.

7 **Requests Relating to Ability to Pay Punitive Damages.**

8 In RFP nos. 58-75 of the third set of requests to MAD, and RFP nos. 3-20 of the second requests
9 to the individual defendants, Plaintiffs seek Defendants' financial records to establish Defendants'
10 ability to pay punitive damages. Defendants object to all the RFPs on the bases that they are overbroad,
11 irrelevant, call for privileged information within Defendants' right to privacy as to a party's confidential
12 affairs, and premature because there has been no finding of liability for punitive damages. Defendants
13 argue the information regarding their net worth and financial condition is privileged, private information
14 protected by the California Constitution, Article I, Section I.

15 Federal courts hearing diversity cases apply federal procedural law and state substantive law.
16 *Hanna v. Plumer*, 380 U.S. 460, 465 (1965); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). State
17 law governs the substance of a privilege asserted in a diversity action. *See* Fed. R. Evid. 501;
18 *Davis v. Leal*, 43 F.Supp. 2d 1102, 1108 (E.D. Cal. 1999). Defendants argue that California Civil Code
19 § 3295(c) is a substantive rule that should apply here. Section 3295(c) requires a prima facie showing
20 that a plaintiff will prevail on a punitive damages claim before a defendant must produce pretrial
21 evidence of ability to pay punitive damages. Plaintiffs argue that federal law regarding privilege should
22 apply because § 3295(c) is a procedural rule and not substantive.

23 To support their argument that § 3295(c) is a substantive rule, Defendants rely on a Ninth Circuit
24 case that held a California penal code statute constituted part of California's substantive state policy
25 protecting privacy and was properly characterized as a substantive law within the meaning of *Erie*.
26 *Feldman v. Allstate Ins. Co.*, 322 F.3d 660 (9th Cir. 2003). In *Feldman*, the statute at issue–Cal. Penal
27 Code § 632–made taping a confidential conversation a crime and limited the admissibility of illegally
28 intercepted conversations. *Id.* at 667. The court found that because secretly recording and replaying

personal conversations might infringe on the right to privacy guaranteed by the California Constitution, § 632 embodied a substantive policy aimed to protect the privacy rights of California's citizens. *Id.*

In contrast, the statute at issue here, Cal. Civ. Code § 3295(c), provides:

> No pretrial discovery by the plaintiff shall be permitted with respect to [defendant's profits and financial condition] unless the court enters an order permitting such discovery . . . Upon motion by the plaintiff supported by appropriate affidavits . . . the court may at any time enter an order permitting the discovery . . . if the court finds . . . that the plaintiff has established that there is a substantial probability that the plaintiff will prevail on the claim [of punitive damages].

Only a few district courts in California have expressly addressed whether § 3295(c) is a substantive or procedural rule. They found § 3295(c) to be a procedural rule. *See Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 295-296 (C.D. Cal. 1998) (stating "as a state discovery and procedural law, Civ. C. § 3295 conflicts with Fed. R. Civ. P. 26(b); it establishes a discovery scheme fundamentally inconsistent with the discovery rules under the Federal Rules of Civil Procedure"); *Charles O. Bradley Trust v. Zenith Capital L.L.C.*, 2005 U.S. Dist. LEXIS 35562, *9-*10 (N.D. Cal. 2005) (acknowledging that California law requires a prima facie showing of substantial probability of prevailing on the claim but finding that federal law regarding privilege applies). In contrast to *Feldman*, this Court finds that § 3295(c) sets out the procedure for how or when discovery regarding the Defendants' financial information may be obtained, and thus is a procedural rule and does not bear on the substance of the privilege available to Defendants. Under the Federal Rules, the use of protective orders govern how or when discovery may be obtained.

Even though the protection of § 3295(c) is not available to Defendants, they are still protected by the substance of California's law on privacy. The substantive right to financial privacy extends to individuals in litigation. *Davis v. Leal*, 43 F. Supp. 2d 1102, 1110 (E.D. Cal. 1999). The asserted privileges that protect financial and proprietary information are not absolute, but are subject to balancing the needs of the litigation with the sensitivity of the information and records sought. *Id.* (citing *Valley Bank of Nevada v. Superior Court*, 15 Cal.3d 652, 657 (1975)). The party asserting the privilege has the initial burden to establish the existence of the privilege; then, the burden shifts to the party seeking the information to justify the need for the information. *Id.* Courts employ a balancing test to determine whether a disclosure of financial information might violate a constitutional right to privacy. *Charles O.*

*Bradley Trust*, 2005 U.S. Dist. LEXIS 355562 at \*6 (citations omitted). Factors such as ascertainment of the truth, addressing defendants' potentially severe conduct and enforcement of rights weigh in favor of disclosure while widespread dissemination of information favors nondisclosure. *Id.* at \*7-\*8 (ordering production of financial documents under a strict protective order limited to counsel only and requiring destruction of all information at the end of litigation).

Plaintiffs acknowledge the information sought here is highly confidential and to be used to determine punitive damages. They state that Defendants may designate it confidential under the Protective Order. In arguing that the balance of factors falls in favor of disclosing the financial information, Plaintiffs rely on *Oakes*. In *Oakes*, the court ordered counterdefendants to respond to three RFPs and two interrogatories subject to the operative protective order. 179 F.R.D. at 284-285. The protective order limited confidential material to use only in that litigation. *Id.* at 283. In ordering production, the magistrate judge noted the district judge had specifically found–in at least three instances–that counterdefendants made certain false and libelous statements in an Internet website regarding some of the counterclaimants' actions, the counterclaimants were likely to prevail on their trade libel claim and the counterdefendants had a substantial punitive damages claim. *Id.* at 282, 286. The court also acknowledged that one of the purposes behind allowing the broad discovery into financial information was to promote settlement so that both sides could realistically appraise the case. *Id.* at 286.

Here, Plaintiffs seek 18 highly sensitive RFPs against each of the defendants. So far, the district judge has not yet made any finding regarding liability. Currently pending before the district judge is Defendants' motion for summary judgment on the issues of the existence of an oral contract; whether Defendants received valuable services, improvements or enrichments from Plaintiffs; whether Plaintiffs were wholesale representatives of Defendants; and whether all causes of action are barred by the statute of limitations and/or laches.

While Plaintiffs are entitled to discovery of Defendants' financial information subject to the Protective Order, requiring the extensive production at this point in the litigation appears to be an inefficient use of the parties' resources in light of the pending motion for summary judgment. Even though this Court has previously ordered that liability and damages discovery not be bifurcated, that

holding was predicated on Plaintiffs' representation that the financial information sought was for the sole purpose of determining compensatory damages. *See Pls.' Opp'n to Mot. to Stay and/or Bifurcate Discovery*, p.10, ll.3-18. Here, Plaintiffs admittedly seek extensive financial information in the 54 posed RFPs solely for the issue of punitive damages. But they do not need the information at this time to prepare the heart of their case. Further, it seems unlikely that the parties will be able to seriously address settlement until the summary judgment motion is adjudicated, so that information will not be used to facilitate settlement. Therefore, this Court finds that Plaintiffs will suffer no prejudice in postponing the production of Defendants' financial information until after the ruling on the summary judgment motion, and only if the issue of punitive damages remains relevant.

For these reasons, the Court **GRANTS in part** and **DENIES in part** Plaintiffs' request to compel responses to the 54 RFPs regarding punitive damages. If, after the ruling on the summary judgment motion, the issue of punitive damages is still relevant, Defendants shall respond to the RFPs, subject to the terms of the protective order, within 30 days of the summary judgment ruling. If, after the summary judgment ruling, punitive damages is no longer at issue, Defendants need not respond to the RFPs.

**IT IS SO ORDERED.**

DATED: June 13, 2008

_____
Hon. Nita L. Stormes
U.S. Magistrate Judge